PEGGY SHOAF v. TED B. SHOAF

No. 8

(Filed 15 November 1972)

1. Parent and Child § 7— duty to support child — enforcement by court

When parents of minor children invoke the jurisdiction of the court on matters involving separation, support, custody, etc., the children become wards of the court and the court thereafter has authority to force the parent to discharge the legal obligation to support a minor child until he reaches legal age; however, the authority of the court to require support for a normal child ceases when the legal obligation to support no longer exists.

2. Parent and Child § 7— child support — no vested right beyond emancipation

Neither the parent nor the infant has any vested right in a support order which would extend the payments beyond the age of emancipation.

3. Parent and Child § 7— age of emancipation — determination by Legislature

The Legislature alone has power to determine the age at which one reaches his majority, becomes emancipated, and acquires the right to manage his own affairs free from parental control.

4. Divorce and Alimony § 23; Parent and Child § 7— duty to support child — termination at age 18

Where, by the terms of a consent judgment, defendant father agreed to make payments for the support of his son "until such time as said minor child reaches his majority or is otherwise emancipated," such obligation to make payments ceased upon passage of G.S. 48A fixing the age of majority at eighteen, since the child was already eighteen at the time the act was passed.

**5. Divorce and Alimony § 23; Parent and Child § 7— duty to support child — changed conditions**

Since child support payment becomes subject to review by the court upon change of conditions, defendant father who was under obligation to make payments until his minor child reached majority or was otherwise emancipated was entitled to relief where the Legislature unequivocally changed the conditions by fixing a different date upon which liability to support a child terminated.

APPEAL by defendant from the decision of the North Carolina Court of Appeals (14 N.C. App. 231, 188 S.E. 2d 19) affirming the order of the BUNCOMBE County District Court that the defendant pay to the plaintiff support for their son until he became twenty-one years of age. Judge Vaughn dissented and the defendant appealed.

On May 13, 1970, the plaintiff, Peggy Shoaf, wife, instituted this action against Ted B. Shoaf, husband, for alimony without divorce, for custody of, and support for Jeffrey Byron Shoaf, born January 13, 1953. On June 11, 1970, the parties, their attorneys, and the court signed a judgment fixing the amount of alimony and child support payments the defendant should pay to the plaintiff. The judgment contained the following: "That said payments of alimony, support, and maintenance for the Plaintiff shall continue during the lifetime of the Plaintiff or until such time as she remarries, *and that said payments for child support shall continue until such time as said minor child reaches his majority or is otherwise emancipated.*" (Emphasis added.)

At the time the foregoing judgment was entered, according to the common law rule, an infant became emancipated at twenty-one years. However, effective July 5, 1971, North Carolina General Statute 48A-1 provides: "The common law definition of 'minor' insofar as it pertains to the age of the minor, is hereby repealed and abrogated." G.S. 48A-2 provides: "A minor is any person who has not reached the age of 18 years."

Although Jeffrey Byron Shoaf became eighteen years of age on January 13, 1971, he was still a minor under the common law. G.S. 48A was not then in effect. He did, however, become emancipated on the effective date of Chapter 48A— July 5, 1971. The defendant made two payments subsequent to the effective date of G.S. 48A. Thereafter he declined to

make any payments to his former wife who in the meantime had obtained an absolute divorce. The plaintiff obtained from the district court a citation to the defendant to appear before the court and show cause why he should not be adjudged in contempt for failure to continue payments to the plaintiff for Jeffrey Byron Shoaf until he became twenty-one years of age.

The defendant answered the citation alleging that Jeffrey Byron Shoaf has now become an adult and that the defendant desires to assist his son on a voluntary basis without being forced to pay through the plaintiff from whom he is divorced.

The court, finding the defendant had paid the plaintiff for Jeffrey Byron Shoaf the amount specified through November, 1971, thereupon ordered the defendant to continue the monthly payments to the plaintiff for Jeffrey Byron Shoaf until he became twenty-one years of age.

From the judgment of the district court the defendant appealed to the North Carolina Court of Appeals. The Court of Appeals in an opinion by Judge Hedrick, joined by Judge Brock, affirmed the decision of the district court. Judge Vaughn dissented and on the basis of the dissent, the defendant appealed to this Court.

*Riddle & Shackelford by Robert E. Riddle for plaintiff appellee.*

*Williams, Morris and Golding by James W. Golding for defendant appellant.*

HIGGINS, Justice.

This single question of law is presented for decision: Since the effective date of G.S. 48A, does a father's legal liability for the support of his son born on January 13, 1953, continue until the son becomes twenty-one years of age, by reason of a consent judgment dated June 11, 1970, providing that "payments for child support shall continue until such time as said minor child reaches his majority or is otherwise emancipated?"

[1] When parents of minor children invoke the jurisdiction of the court on matters involving separation, support, custody, etc., the children become wards of the court. The court, thereafter has authority to force the parent to discharge the legal obligation to support a minor child until he reaches legal age.

Shoaf v. Shoaf

After separation, followed by action for divorce in which a complaint has been filed or a writ of habeas corpus has issued, authority to provide for the custody of children vests in the court in which the divorce proceeding is pending. " 'Jurisdiction rests in this (trial) court so long as the action is pending and it is pending for this purpose until the death of one of the parties,' or the youngest child of the marriage *reaches the age of maturity,* (emphasis added) whichever event shall first occur. (Citing many cases.)" *Weddington v. Weddington,* 243 N.C. 702, 92 S.E. 2d 71. The authority of the court to require support for a normal child ceases when the legal obligation to support no longer exists. The parents' duty to support, as well as the right to control and to receive its wages, cease upon emancipation. *Layton v. Layton,* 263 N.C. 453, 139 S.E. 2d 732; *Wells v. Wells,* 227 N.C. 614, 44 S.E. 2d 31.

[2] The custody of minor children during their infancy cannot be controlled finally. "Changed conditions will always justify inquiry by the courts in the interest and welfare of the children, and decrees may be entered as often as the facts justify." *In re Herring,* 268 N.C. 434, 150 S.E. 2d 775; *In re Marlowe,* 268 N.C. 197, 150 S.E. 2d 204. Hence neither the parent nor the infant has any vested right in a support order which would extend the payments beyond the age of emancipation. In *Layton v. Layton, supra,* this Court in discussing a consent order to support a minor, said that nothing indicates the father bound himself to do anything beyond his legal liability to support his son.

"The rule is settled beyond a doubt that majority or minority is a status rather than a fixed or vested right and that the Legislature has such power to fix and change the age of majority." *Valley National Bank v. Glover,* 62 Ariz. 538, 159 P. 2d 292.

Change from minority to majority in legal effect means that legal disabilities designed to protect the child are removed. "The removal of the disabilities does not result in the creation of any new rights, but merely in the termination of certain privileges. There is no vested property right in the personal privileges of infancy." *In re Davidson's Will,* 223 Minn. 268, 26 N.W. 2d 223.

[3] The Legislature alone has power to determine the age at which one reaches his majority, becomes emancipated, and

---

Shoaf v. Shoaf

---

acquires the right to manage his own affairs free from parental control. The legal term "majority" is defined in 42 Am. Jur. 2d, INFANTS, § 1, page 8: "Majority is the age at which the disabilities of infancy are removed, and hence a person who has reached his majority is entitled to the management of his own affairs and to the enjoyment of civic rights."

[4] The plaintiff contends, and the court seems to have agreed, that the liability for support is determined as of the date of the contract and continues as a vested right regardless of any change made by the law. The clear wording of the judgment does not require or permit this interpretation. The liability, always subject to change, continues from the time of the order until, according to its terms, the child reaches his majority or otherwise becomes emancipated. G.S. 48A makes no exception and the court can neither read one into it nor change the age at which an infant becomes an adult.

The defendant had paid every cent and more than his legal obligation required. Not only the father's, but likewise the mother's duty to support Jeffrey Byron Shoaf ceased at the time he became of age. Thereafter, he was under no obligation to conform his life to the wishes of either parent. They were freed of any legal obligation to support him.

Since the passage of the above Act, the court had no more authority to say the father's obligation to support continues to twenty-one than it had to say it stops at fifteen. The age of emancipation is precisely fixed—eighteen. It is the business of the lawmaking body to determine the age of majority. The courts are without power either to raise or lower the age so fixed. The power of the court to force the father to support his minor dependent son arises because of his legal duty to provide that support.

[5] The plaintiff contends that the law in force at the time the contract was made became a part of that contract, thus fixing the emancipation at age twenty-one. Both the district court and the Court of Appeals were misled by assuming the support payment fell in the same category as the property settlement. There is a clear distinction between a property settlement and the discharge of the obligation to support. Justice Sharp for this Court in *Holsomback v. Holsomback*, 273 N.C. 728, 161 S.E. 2d 99, points out the proper distinction. The Court had before it

a judgment signed by the parties and counsel and by the court which fixed property rights, alimony, and child support payments. The trial court undertook to set the judgment aside. This Court said: "In the consent judgment which Judge May purported to set aside, the parties agreed upon a division of their property and upon the amount of alimony which defendant should pay plaintiff until her death or remarriage. . . . The order with reference to the payment of future installments of alimony was, therefore, subject to modification by the court in the event of changed conditions. The agreed division of property, a separable provision, however, was beyond the power of the judge to modify without the consent of both parties. (Citing many cases.)"

A child support payment falls in the same category as an alimony payment and becomes subject to review by the court upon change of conditions. The Legislature unequivocally changed the conditions by fixing a different date upon which liability to support a child terminated. Certainly the mother's liability, as well as the father's to support the son ceased when he became emancipated on July 5, 1971. The father now objects to the court order that he continue to pay his divorced wife support for the son until he becomes twenty-one years of age.

The objection to the order is sustained. For the reasons given, the decision of the Court of Appeals is

Reversed.